Michael D. Seplow (SBN 150183)
mseplow@gmail.com
Aidan C. McGlaze (SBN 277270)
amcglaze@sshhlaw.com
SCHONBRUN SEPLOW HARRIS & HOFFMAN LLP
723 Ocean Front Walk
Venice, California 90291
Telephone: (310) 396-0731
Fax: (310) 399-7040

Attorneys for Plaintiff
MICHAEL YEE and Settlement Class

Additional Counsel for Plaintiff
listed on following page

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGIL SHAROBIEM, *et al.*,<br><br>        Plaintiffs,<br>  vs.<br><br>CVS PHARMACY, INC., *et al.*,<br><br>        Defendants. | Case No. 2:13-CV-9426-GHK (FFMx)<br>[CLASS ACTION]<br><br>[ASSIGNED TO THE HONORABLE CHIEF JUDGE GEORGE H. KING]<br><br>**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[[*PROPOSED] ORDER LODGED CONCURRENTLY HEREWITH*]<br><br>**Date:**      April 11, 2016<br>**Time:**     9:00 a.m.<br>**Courtroom:** 650 (Roybal) |

Thomas W. Falvey (SBN 65744)
thomaswfalvey@gmail.com
Michael H. Boyamian (SBN 256107)
mike.falveylaw@gmail.com
LAW OFFICES OF THOMAS W. FALVEY
550 North Brand Boulevard, Suite 1500
Glendale, CA 91203
Telephone: (818) 547-5200
Fax: (818) 500-9307

Hirad D. Dadgostar (SBN 241549)
hirad@dadgostarlaw.com
Alireza Alivandivafa (SBN 255730)
aalivandi@gmail.com
Azadeh Dadgostar Gilbert (SBN 276072)
azadeh@dadgosarlaw.com
DADGOSTAR LAW LLP
12400 Wilshire Boulevard, Suite 400
Los Angeles, CA 90025
Telephone: (310) 820-1022
Fax: (310) 820-1088

V. James DeSimone (SBN 119668)
vjdesimone@gmail.com
V. JAMES DeSIMONE LAW
13160 Mindanao Way, Suite 280
Marina Del Rey, CA 90292
Telephone: (310) 626-1487

Attorneys for Plaintiff
MICHAEL YEE and Settlement Class

**TO ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on April 11, 2016, at 9:00 a.m., or as soon thereafter as the matter may be heard, in the United States District Court, Central District of California, Courtroom 650 (Edward R. Roybal Federal Building and U.S. Courthouse in Los Angeles), Plaintiff Michael Yee,[1] on behalf of himself and all others similarly situated, will and hereby does move this Court for entry of an Order Granting Final Approval of Class Action Settlement.  Plaintiff's proposed Judgment and Order is lodged concurrently herewith.

This notice and motion is made pursuant to Rule 23 of the Federal Rules of Civil Procedure and on the grounds that the proposed Settlement is fair, reasonable, adequate, and otherwise in the best interests of the proposed class.  The motion is unopposed by Defendants, who are parties to the proposed Settlement.

This motion is based upon this notice; the Memorandum of Points and Authorities submitted herewith; the Supplemental Declaration of Andy Morrison filed herewith; the other records and pleadings in this action, including all documents filed in connection with Plaintiff's Motion and Renewed Motion for Preliminary Approval of a Class Action Settlement, and Plaintiff's Motion for Attorneys' Fees and Costs, Settlement Administrator Costs, and Enhancement Award; and upon such other documentary and oral evidence or argument as may be presented to the Court at the hearing of this motion.

Dated:  March 14, 2016                Respectfully submitted,

SCHONBRUN SEPLOW HARRIS & HOFFMAN LLP
LAW OFFICE OF THOMAS W. FALVEY
DADGOSTAR LAW LLP
V. JAMES DeSIMONE LAW

By:   /s/ Aidan C. McGlaze
         Aidan C. McGlaze
Attorneys for Plaintiff Michael Yee and Settlement Class

---

[1] Pursuant to the Court's Order (ECF No. 75), Plaintiff Angil Sharobiem has withdrawn as proposed class representative and Plaintiff Yee is the new class representative.

# **TABLE OF CONTENTS**

I.     INTRODUCTION .................................................................. 1

II.    CASE SUMMARY ............................................................... 3

III.   SUMMARY OF THE TERMS OF THE SETTLEMENT ................................. 5

    A.    The Notice Process Ensured that Class Members Were Fairly and Fully Informed of this Settlement. .............................................. 8

    B.    In the Event Any Unclaimed Funds that Are Not Redistributed to the Class Members, the California State Bar Is an Appropriate *Cy Pres* Beneficiary ............................................................................. 9

IV.   FINAL APPROVAL IS WARRANTED FOR THIS OUTSTANDING SETTLEMENT ............................................................ 10

    A.    An Assessment of the Claims and Defenses Asserted and Other Relevant Factors Weighs Strongly in Favor of Approving the Settlement ............................................................. 11

    B.    The Discovery and Investigation Completed Weigh in Favor of Approving the Settlement ..................................................... 12

    C.    Plaintiff's and Defendants' Counsel Are Experienced, and the Settlement Is the Product of Serious, Informed, Non-Collusive and Good-Faith Negotiations ................................................. 13

    D.    The Class's Positive Response to the Settlement, to Which There Have Been No Objections, Strongly Supports Final Approval .............. 14

    E.    The Requested Attorneys' Fees, Costs and Services Award Are Reasonable and Comparable to Those Routinely Awarded. ................... 16

V.    CONCLUSION .................................................................. 16

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Cody v. Hillard*,
  88 F. Supp. 2d 1049 (D.S.D. 2000) ...................................................... 15

*Deaver v. Compass Bank*,
  No. 13-CV-00222-JSC, 2015 WL 8526982 (N.D. Cal. Dec. 11, 2015) ...................... 16

*Ellis v. Naval Air Rework Facility*
  (N.D. Cal. 1980) 87 F.R.D. 15 ........................................................ 13

*Fisher Bros. v. Cambridge Lee Indus., Inc.*
  (E.D. Pa 1985) 630 F. Supp. 482 ...................................................... 13

*Franklin v. Kaypro Corp.*,
  884 F.2d 1222 (9th Cir. 1989) ........................................................ 10

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ........................................................ 10

*In re Am. Bank Note Holographics, Inc.*,
  127 F. Supp. 2d 418 (S.D.N.Y. 2001) .................................................. 15

*In re Art Materials Antitrust Litig.*,
  100 F.R.D. 367 (N.D. Ohio 1983) ...................................................... 15

*In re Dun & Bradstreet Credit Servs. Customer Litig.*,
  130 F.R.D. 366 (S.D. Ohio 1990) ...................................................... 15

*In re Wells Fargo Loan Processor Overtime Pay Litig.*,
  No. MDL C-07-1841 EMC, 2011 WL 3352460 (N.D. Cal. Aug. 2, 2011) ..................... 16

# TABLE OF AUTHORITIES CONTINUED

## FEDERAL CASES

*Mandujano v. Basic Vegetable Prods., Inc.*,
541 F.2d 832 (9th Cir. 1976) ................................................................14-15

*Officers for Justice v. Civil Serv. Comm'n*,
688 F. 2d 615 (9th Cir. 1982) .....................................................................10

*Satchell v. Fed. Exp. Corp.*,
2007 WL 1114010 (N.D. Cal. Apr. 13, 2007)................................................14

*Staton v. Boeing*,
327 F.3d 938 (9th Cir. 2003) .......................................................................10

*Stovall-Gusman v. W.W. Granger, Inc.*,
No. 13-CV-02540-HSG, 2015 WL 3776765 (N.D. Cal. June 17, 2015).....................16

## FEDERAL RULES

Rule 23(e)................................................................................................10

## STATE STATUTES

Cal. Code Civ. Proc. § 384(a) .......................................................................9

## I.   INTRODUCTION

Plaintiff Michael Yee seeks final approval of this Class Action Settlement, in which CVS has agreed to pay $2,937,600, on a non-reversionary basis, to settle claims of 744 current and former CVS pharmacists who worked more than six consecutive days without overtime for work performed on the seventh consecutive day in CVS's Region 60 during the class period.  The proposed settlement will provide an average net recovery of approximately $2,300 per class member.  The Court-approved Notice Packets were mailed on December 24, 2015.  There have been no objections to the Settlement or to the Motion for Attorneys' Fees, which was duly posted on the settlement administrator's website, and only three class members have opted out.  The Settlement, which was reached as a result of arm's-length negotiations with the assistance of respected mediator Mark Rudy, is eminently fair and reasonable and should be approved.  Indeed, the other four actions that are part of this global Settlement have all received final approval in the courts in which they were pending, and not a single class member has objected in any of the settlements.[1]   By this unopposed motion, Plaintiff requests final approval of the

---

[1] CVS divides its California operations into six distinct "Regions." The proposed settlement of this case is part of a global settlement of all claims against CVS in California related to allegations that pharmacists worked more than six consecutive days without overtime in five of these Regions.  The total global settlement value for the five 7-Day Cases is $12,750,000 of which $2,937,600 (approximately 23%) is allocated for the settlement of claims involving Region 60 in that this Region accounts for approximately 23% of the alleged 7-day violations at issue.  The other 7-Day Cases (for Regions 54, 65, 73 and 74) were pending in Los Angeles County Superior Court ("L.A.S.C.") and the Northern District of California.  *Connell v. CVS Pharmacy, Inc.*, L.A.S.C. Case No. BC523172 (Region 65); *Paksy v. CVS Pharmacy, Inc.*, L.A.S.C. Case No. BC523491 (Region 54); and *Bystrom v. CVS Pharmacy, Inc.*, L.A.S.C. Case No. BC525991 (Region 74) received consolidated final approval on February 2, 2016.  *Uppal v. CVS Pharmacy, Inc., et al.*, Case No. 3:14-cv-02629-VC (N.D. Cal.) (Region 73) received preliminary approval on September 11, 2015, and the final approval was granted on March 10, 2016.  Prior to the Parties' agreement to the global 7-Day settlement, on October 16, 2014, the Los Angeles County Superior Court granted final approval of a similar settlement of $2.81 million on behalf of CVS pharmacists in the only remaining region of CVS's California operations, Region 72.  *Meneses-Barnett v. CVS Pharmacy,*

proposed Settlement, which was preliminarily approved by this Court on December 1, 2015, including a final determination that the Settlement is in good faith and fair to the settlement class.

In the previously-filed Motion for Final Approval of Attorneys' Fees and Costs, Settlement Administration Costs, and Enhancement Award ("Motion for Attorneys' Fees," ECF No. 90), Plaintiff also seeks an award of attorneys' fees in the amount of $979,200 (one-third of the gross settlement), a presumptively reasonable amount given that Class Counsel's lodestar actually exceeds the requested fee award.  In addition, the Motion for Attorneys' Fees seeks Court approval for reimbursement of litigation costs in the amount of $16,258.48; the costs of settlement administration,[2] projected at $14,613.05 through completion; a "service award" for the named Plaintiff and Class Representative, Michael Yee, of $5,000; and a $6,900 payment to the California Labor and Workforce Development Agency ("LWDA").  After deducting the requested fees and costs, the Net Settlement amount to be distributed to Class Members, inclusive of payroll taxes, is $1,915,628.47.  *See* Supplemental Declaration of Andy Morrison re Notice Procedures and Settlement Administrator Costs in Support of Plaintiff's Motion for Final Approval of Settlement ("Supp. Morrison Declaration," filed concurrently herewith), at ¶ 6.  The average net recovery per class member is anticipated to be over $2,300.  *See id.* Twenty-eight Class Members will receive more than $15,000 and ninety-one Class Members will receive more than $5,000, while the highest recovery by a single Class Member will be approximately $21,000.  *Id.*

---

*Inc.*, L.A.S.C. Case No. BC489739.  Notably, no class members objected to any of the 7-day settlements.

[2] In the event that any unclaimed funds equal to or exceed $20,000, Class Counsel proposes the Settlement Administrator shall make a second distribution to those Class Members who cashed their checks with the costs of this second distribution, which is projected at $8,072.93 inclusive of postage, being paid from the remaining undistributed funds.  *See* Declaration of Andy Morrison re: Notice Procedures and Settlement Administrator Costs in Support of Plaintiff's Motion for Attorneys' Fees ("Morrison Decl.," ECF No. 90-5) , ¶ 17.

1    Final approval is warranted because this is a fair and positive result for the Class

2    Members, as evidenced by their extremely positive response to the settlement.  As of

3    March 14, 2016, no Class Member has objected to the settlement, and only three Class

4    Members have opted out, signifying overwhelming approval by Class Members.  *See*

5    Supp. Morrison Decl., ¶¶ 3-4.  All of the Court's requirements for Notice to the Class, set

6    forth pursuant to the Order Granting Preliminary Approval, have been fully complied

7    with.   The conclusion that the Settlement is a truly excellent result becomes more

8    apparent in light of Defendants' defenses to Plaintiff's claims, as described in Plaintiff's

9    Renewed Motion for Preliminary Approval of Class Action Settlement (ECF No. 73,

10   Section IV.C).  Indeed, the Settlement strikes a balance between the perils of continued

11   litigation and fairly compensating Class Members.  The Settlement is fair and reasonable,

12   and should be approved.

13   **II.     CASE SUMMARY**

14          This case is on behalf of pharmacists employed by CVS in Region 60 who worked

15   more than six consecutive days without being paid overtime.  Plaintiff contends that

16   regardless of how the workweek is defined, pharmacists who work more than six

17   consecutive days are entitled to overtime pay for work beyond the sixth day pursuant to

18   the California Labor Code.  In contrast, Defendants contend that no overtime was owed

19   to Plaintiff and the putative Class Members where the consecutive days spanned more

20   than one of Defendants' defined workweeks (Sunday to Saturday).

21          This action was originally filed in Los Angeles Superior Court on November 6,

22   2013, seeking relief for Defendants' alleged failure to pay overtime to Plaintiff and other

23   similarly situated pharmacists (the "Class") in CVS's Region 60, Defendants' alleged

24   failure to provide accurate, itemized wage statements to the Class, and Defendants'

25   alleged failure to provide Class Members with one day off in seven.  Plaintiff also stated

26   causes of action for conversion, waiting time penalties, unfair business practices, and

penalties under the Private Attorneys General Act.[3]   In December 2013, Defendants removed *Sharobiem*, *Connell*, *Bystrom*, and *Paksy* to federal court, where the related cases were transferred to this Court.   On March 26, 2014, this Court granted Plaintiffs' motions to remand *Connell*, *Bystrom*, and *Paksy*, but denied Plaintiff's motion to remand *Sharobiem*.   Defendants subsequently petitioned the Ninth Circuit for permission to appeal the remand orders this Court issued in the related cases, arguing that the district court should have aggregated the amounts in controversy in the related actions to satisfy CAFA's $5 million jurisdictional threshold.   On October 14, 2014, the Ninth Circuit granted Defendants' petitions to appeal in *Connell*, *Bystrom*, and *Paksy*.   The Ninth Circuit subsequently granted the parties' joint motion to stay briefing in these appeals pending the outcome of an agreed-upon mediation which took place on November 14, 2014, before respected mediator Mark Rudy.[4]

Although the cases did not resolve at the November 14, 2014 mediation, Mr. Rudy continued to engage the parties in settlement discussions.   Meanwhile, on January 13, 2015, the parties filed cross motions for summary judgment in the *Sharobiem* case on the core legal issue of whether pharmacists are entitled to overtime for all hours worked on the seventh consecutive day of work where the seven-day period spans two of Defendants' defined workweeks.   While the cross motions were pending, but before they could be heard by the court, the parties, with the assistance of Mr. Rudy, reached a global settlement of all five 7-Day Cases in California.   Under the terms of the 7-Day Cases Settlement, CVS will pay a total non-reversionary settlement of $12,750,000 to resolve all the remaining 7-day claims in California.   The settlement terms are substantially

---

[3] Plaintiff's counsel are also counsel of record in a second set of six related cases against CVS based on the failure to compensate "floater" pharmacists for their travel time and expenses when traveling to CVS stores, which are not their home stores.   There is a separate settlement of the "Floater Cases" for which a motion for preliminary approval will be separately filed with the Los Angeles County Superior Court.

[4] Defendants also removed *Uppal*, which was filed on March 27, 2014 in Alameda Superior Court, to federal court.   Plaintiff's motion to remand *Uppal* was stayed by stipulation pending resolution of the remand orders on appeal to the Ninth Circuit.   The appeals have been dismissed in light of the global Settlement.

similar to the settlement approved by Judge Wiley in the *Meneses-Barnett* case.  The settlement amount in this case ($2,937,600) represents approximately 23% of $12.75 million global settlement, reflecting the pro rata allocation of all alleged 7-day violations in Region 60.

The proposed class, as set forth in the operative complaints, is defined as follows:

> All persons who are or were employed by DEFENDANTS as non-exempt pharmacists in DEFENDANTS' Region 60 in the State of California, and who worked more than six consecutive days of work at any time during the class period.

The Class Period is defined as four years prior to the filing of this action (November 6, 2013), through April 30, 2015.  Settlement Agreement ¶ 13.

## III.   SUMMARY OF THE TERMS OF THE SETTLEMENT

The basic terms of the proposed settlement are as follows:

1.   Defendants will pay a gross amount of $2,937,600 with no reversion.  This represents 23.04% of the global $12,750,000 settlement of all 7-Day Cases, which is the approximate proportion of the total alleged 7-day violations that occurred within Region 60.  *See* Settlement Agreement at ¶ 8.  The global Settlement Agreement is attached as Exhibit 1 (ECF No. 74-1) to the Declaration of V. James DeSimone in support of Plaintiff's Renewed Motion for Preliminary Approval.

2.   Plaintiff seeks attorneys' fees in the amount of $979,200 (one-third of the gross settlement and *less* than Class Counsel's lodestar), as well as reimbursement of their costs and expenses of $16,258.48, which will not be opposed by Defendants.  Settlement Agreement at ¶ 26.

3.   The Settlement Administration costs are projected to be $14,613.05 through completion, with an additional $8,072.93 in costs if the unclaimed funds exceed $20,000 and the Settlement Administrator undertakes a second distribution of these funds.  Settlement Agreement at ¶ 27; Morrison Decl., ¶ 17.

4.   Plaintiff seeks a service award in the amount of $5,000, which will not be opposed by Defendants.  Settlement Agreement at ¶ 25.

5.     The LWDA will receive payment in the amount of $6,900 in connection with the settlement of claims under PAGA.  Settlement Agreement at ¶ 11.

6.     The employers' share of payroll taxes will also be paid from the gross settlement amount.  Settlement Agreement at ¶¶ 8, 56. The Settlement Administrator, Kurtzman Carson Consultants, LLC ("KCC"), estimates this amount at $154,506.75. Supp. Morrison Decl., ¶ 6.

7.     Class Members will be paid based on the number of "Compensable Workweeks" (*i.e.*, occurrences) in which they worked more than six consecutive days without overtime pay.   The Payment Ratio and proportionate distribution has been calculated for each Settlement Class Member based on their number of Compensable Workweeks.   First, the Settlement Administrator calculated the total Compensable Workweeks for all Class Members.  The respective Compensable Workweeks for each Class Member are then be divided by the total Compensable Workweeks for all Class Members, resulting in the Payment Ratio for each Class Member.  Each Settlement Class Member's Payment Ratio is then multiplied by the Net Settlement Amount to determine his or her estimated Individual Settlement Payment.  Settlement Agreement at ¶ 14.  In this case, among the 744 Class Members who did not opt out, there were approximately 9,383 Compensable Workweeks.  Supp. Morrison Decl., ¶ 5.  The Net Settlement Amount (subject to the Court's approval of the requests for attorneys' fees and expenses, service award, payroll taxes, and administration expenses) is approximately $1,915,628.47.  This translates to a net payment of approximately $204.16 for each Compensable Workweek (or $187.69 per Workweek after the employer's payroll taxes are deducted).  Supp. Morrison Decl., ¶ 6.  The average Class Member should receive a net payment of approximately $2,367.10, although each pharmacist's recovery will be based on the number of Compensable Workweeks within the class period. *See  id*.

8.     There is no injunctive relief as part of the settlement agreement in that the named Plaintiff is a former employee of CVS and thus lacks standing to seek injunctive relief.   Nonetheless, since 2014, CVS has discontinued the practice of scheduling

pharmacists in California to work more than six consecutive days.  *See* Declaration of Michael D. Seplow in Support of Plaintiff's Motion for Attorneys' Fees ("Seplow. Decl.," ECF No. 91), ¶ 16.G.

9.    The Release covers all claims for penalties and seventh-day overtime pay for any pharmacist who worked in Region 60 during the relevant class period relating to the allegation in the case that pharmacists worked more than six consecutive days without receiving a day off or overtime, and includes all such related claims (including violations under Labor Code sections 203 (waiting time) and 226 (pay stubs)) or claims arising out of such allegations.    However, the Release does not include claims by "floater" pharmacists who contend that they were not compensated for travel time and expenses when traveling to different CVS stores, other than any penalties that may arise in the floater cases (to avoid potential double recovery of such penalties).  *See* Settlement Agreement at ¶ 17.  The Release only applies to claims related to working more than six consecutive days without overtime compensation.  In addition, the parties executed an addendum to the Settlement Agreement providing that the release does *not* include a Civil Code Section 1542 waiver.  *See* ECF No. 74-2 (July 13, 2015 Addendum to Settlement Agreement).

10.    Notice packets were mailed to all Settlement Class Members via first class mail on December 24, 2015.  The deadline for class members to submit objections or requests for exclusion was February 22, 2016.  An exemplar of the Notice of Class Action Settlement which was mailed to Class Members on December 24, 2015, is attached as Exhibit A to the previously-filed Declaration of Andy Morrison from KCC, the Settlement Administrator (ECF No. 90-5).

11.    The *Sharobiem* settlement does not encompass a release of claims under the federal Fair Labor Standards Act ("FLSA").  *See* ECF No. 74-3 (September 2015 Addendum to Settlement Agreement).

---

12.    The settlement payments will be allocated as 50% wages (subject to withholding and issuance of a W-2 form) and 50% interest (with no withholdings and the issuance of a 1099 form).  Settlement Agreement at ¶ 15.

13.    Settlement checks will be valid and negotiable for 180 days. If any uncashed checks equal to or exceed the total sum of $20,000.00, then the Settlement Administrator shall redistribute the remaining balance (after additional administrative costs estimated to be $8,072.93) pro rata to the class members (of which there are expected to be 744 total) who do cash their checks up to the amount of their actual damages.  *See* Morrison Decl. (ECF No. 90-5), ¶ 17.   Any additional unclaimed funds remaining after such second disbursement will be disbursed to the State Bar of California.   Settlement Agreement at ¶ 24(a); Morrison Decl., Ex. A (Notice at p. 5 (Part 6, ¶ G re: "Unclaimed Funds")).

### A. The Notice Process Ensured that Class Members Were Fairly and Fully Informed of this Settlement.

This Court approved the Notice Packet, which included the Notice of Class Action Settlement and the Request for Exclusion Form.  The Notice Packet was mailed by the Settlement Administrator to the last known address of all class members via First Class Mail on December 24, 2015.  Morrison Decl., ¶ 9.  The final deadline for objections or exclusions was February 22, 2016.

Of the Notices mailed to the Class Members' most recent known addresses based upon Defendants' records (after running the addresses through the U.S. Postal Service Change of Address system), eleven were initially returned as undeliverable to KCC. Morrison Decl. ¶ 11.  Of these, KCC conducted ten address searches using credit and other public source databases, and was able to locate new addresses for five of these class members.   One additional class member contacted KCC to advise KCC of their new address.  *Id*.  Of the five class members with newly found addresses, none have been returned by the U.S. Postal Service.  *Id*., ¶ 12.

In addition, KCC established a toll-free telephone number that Class Members could contact with any questions.  *Id*. ¶ 6.  KCC handled approximately ten inbound and

outbound telephone calls, and processed one request to have a Notice Packet re-mailed. *Id.* ¶ 14.  Two class members submitted disputes regarding the number of compensable workweeks for which they were credited; one of these disputes has been approved and the parties are still reviewing the other dispute.  *See* Supp. Morrison Decl., ¶ 5.

Furthermore, KCC established a website to provide information about the settlement and to allow Class Members to download copies of the Notice, and provided this information to the Class in the class notice.  Morrison Decl., ¶ 7.  In sum, Counsel worked diligently with KCC to ensure that all Class Members are aware of this settlement, had the opportunity to consider the terms of the settlement.  Seplow Decl. ¶ 21.

This manner of notice and additional outreach was reasonably calculated to provide notice to Class Members and complies with the requirements of the Court's Order Granting Preliminary Approval.  The cost of the notice shall be part of the Settlement Administration costs, which are projected to be $14,613.05 through completion.[5]

## B. In the Event Any Unclaimed Funds that Are Not Redistributed to the Class Members, the California State Bar Is an Appropriate *Cy Pres* Beneficiary

As discussed above, settlement checks will be valid and negotiable for 180 days, and if any uncashed checks equal to or exceed $20,000.00 in the aggregate, those funds shall be redistributed after additional administrative costs pro rata to the class members who have cashed their checks.  Unclaimed funds otherwise will be disbursed to the California State Bar, which is a presumptively appropriate *cy pres* beneficiary.  *See* Cal. Code Civ. Proc. § 384(a).

///

///

---

[5] *See also* fn.2, *supra* (additional costs of possible second distribution to class members from any unclaimed funds of $20,000 or more).

## IV.   FINAL APPROVAL IS WARRANTED FOR THIS OUTSTANDING SETTLEMENT

Federal law strongly encourages settlements in the context of class actions.  *See, e.g., Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) ("overriding public interest in settling and quieting litigation" is "particularly true in class action suits"). When reviewing a motion for approval of a class settlement, the Court should give due regard to "what is otherwise a private consensual agreement negotiated between the parties," and must therefore limit the inquiry "to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n*, 688 F. 2d 615, 625 (9th Cir. 1982).

To approve a proposed settlement of a class action under Federal Rule 23(e), the Court must find that the proposed settlement is "fair, adequate and reasonable," recognizing that "it is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Staton v. Boeing*, 327 F.3d 938, 960 (9th Cir. 2003) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).   Although Rule 23 provides no precise formula for making this determination, the Ninth Circuit has identified several factors to be considered: (1) the strength of the case; (2) the size of the claims and amount offered to settle them; (3) the risk, expense, complexity and likely duration of further litigation; (4) the stage of the proceedings, *i.e.*, whether the plaintiffs and their counsel have conducted sufficient discovery to make an informed decision on settlement; (5) whether the class has been fairly and adequately represented during settlement negotiations by experienced counsel; and (6) the reaction of the class to the proposed settlement. *See id.* (noting that the relative importance of each of these factors will depend on the circumstances of the case). Here, all of the relevant factors weigh in favor of final approval.

The total settlement amount is $2,937,600, which includes payment to Settlement Class Members, the named Plaintiff's service award, the costs of administration of the

settlement, the employers' share of payroll taxes, and attorneys' fees and costs.  As discussed more fully below, these amounts are eminently fair and reasonable under all of the relevant circumstances.

Should the Court not approve the Settlement, Plaintiff would have to pursue further discovery and file contested motions for class certification and partial summary judgment.  Attorneys' fees and litigation costs would increase significantly if Plaintiff was to take this case through class certification and trial.  Moreover, Defendants would likely appeal any adverse verdicts at trial.  For these reasons, as well as the reasons stated below, the Settlement is a fair and reasonable outcome for the Settlement Class members.

## A. An Assessment of the Claims and Defenses Asserted and Other Relevant Factors Weighs Strongly in Favor of Approving the Settlement

The settlement considers the strengths and weaknesses of both parties' respective positions. Plaintiff's counsel closely analyzed substantial payroll documentation provided by Defendants and Settlement Class Members.  Seplow Decl., ¶¶ 10, 20, 21.  Class Counsel believes that Plaintiff has viable claims that Defendants implemented and engaged in unlawful wage and hour policies and practices, failing to pay overtime to pharmacists who work more than six consecutive days.  Seplow Decl., ¶ 20.

However, Defendants contend that their employment policies and practices did not violate applicable wage and hour laws or the California Labor Code.  Defendants further contend that the amount of damages and penalties available is far less than Plaintiff claims.  Thus, in Defendants' view, there is no guarantee of a good outcome for Plaintiff at trial.

Specifically, Defendants champion the argument that when seven consecutive days of work span two of CVS's defined Sunday-Saturday workweeks, no premium overtime is owed.  As discussed extensively in Plaintiff's Renewed Motion for Preliminary Approval (ECF No. 73, Section IV.C), California law is unsettled on the core legal question of whether overtime is owed when an employee works more than six days in a row spanning more than one of an employer's designated workweeks.

Should the Court not approve the Settlement, Plaintiff would have to pursue further discovery and renewed briefing on cross-motions for partial summary judgment. Attorneys' fees and litigation costs would increase significantly if Plaintiff were to take this case through class certification, dispositive motions on an unsettled controlling question of law, and trial. Here, in light of the strengths and weaknesses of the case, and the associated risks of continued litigation where the law remains in flux, the amount obtained in settlement is reasonable, adequate, and represents and extraordinary result for the class.

## B. The Discovery and Investigation Completed Weigh in Favor of Approving the Settlement

The discovery and investigation conducted in this and the other related 7-Day Cases have allowed both parties to act prudently in coming to an informed settlement. The parties engaged in extensive formal and informal discovery in advance of the mediation. Specifically, Defendants produced numerous documents, in addition to voluminous electronic data, including the time and payroll records for all members of the putative class. Defendants also provided important information about the class and the claims. Seplow Decl., ¶ 21. Based on this and other documentation and information obtained directly from Settlement Class Members, Plaintiff's counsel completed an extensive and detailed analysis of the Plaintiff's claims and the Defendants' potential liabilities. *See id.*

Accordingly, at the time of settlement, Plaintiff's counsel had a wealth of information upon which to make an informed decision about the appropriate value at which to settle this and the other related 7-Day Cases. The parties had sufficient information and extensive knowledge about the strengths and weaknesses of each other's cases to allow for negotiation of a fair settlement.

///

///

### C. Plaintiff's and Defendants' Counsel Are Experienced, and the Settlement Is the Product of Serious, Informed, Non-Collusive and Good-Faith Negotiations

This is not a case of collusion by counsel for the parties, but is instead a thoughtful, careful agreement to resolve the Class Members' claims by experienced counsel, negotiating at arms-length, who have weighed the strengths of the case and examined all issues and risks of litigation and endorse the proposed settlement. The view of the attorneys actively conducting this litigation "is entitled to significant weight" in deciding whether to approve the settlement. (*Ellis v. Naval Air Rework Facility* (N.D. Cal. 1980) 87 F.R.D. 15, 18, aff'd 661 F.2d 939 (9th Cir. 1980); *Fisher Bros. v. Cambridge Lee Indus., Inc.* (E.D. Pa 1985) 630 F. Supp. 482, 488.)

Class Counsel are very experienced in class actions, including wage and hour class actions, and have been successful in obtaining large dollar settlements on behalf of a class of persons. Seplow Decl., ¶¶ 28-34; Declaration of Thomas W. Falvey in Support of Plaintiff's Motion for Attorneys' Fees (ECF No. 90-4), ¶¶ 8-9; Declaration of V. James DeSimone in Support of Plaintiff's Motion for Attorneys' Fees (ECF No. 90-3), ¶¶ 3-4; Declaration of Hirad D. Dadgostar in Support of Plaintiff's Motion for Attorneys' Fees (ECF No. 90-2), ¶ 4; Declaration of Alireza Alivandivafa in Support of Plaintiff's Motion for Attorneys' Fees (ECF No. 90-1), ¶¶ 3-5. In addition, Class Counsel are very experienced in labor and employment law cases. *See generally id*. In light of this experience, Class Counsel are experienced and qualified to evaluate the Class claims and to evaluate settlement versus trial, on a fully informed basis, and to evaluate the viability of the defenses.

Class Counsel is convinced that this settlement is in the best interest of the Class based on the negotiations and a detailed knowledge of the issues present in these actions. Seplow Decl., ¶¶ 20, 21. The length and risks of trial and other normal perils of litigation that may have impacted the value of the claims were all weighed in reaching the proposed settlement. The affirmative defenses asserted by the Defendants, the prospect of a potential adverse summary judgment ruling or denial of class certification, the

difficulties of complex litigation, the lengthy process of establishing specific damages and various delays and appeals, were also carefully considered by Class Counsel in agreeing to the proposed settlement. Specifically, Class Counsel balanced the terms of the proposed settlement against the probable outcome of liability and the range of recovery at trial. *Id.*

Counsel on both sides share the view that the Settlement is a fair and reasonable compromise, taking into consideration the complexities of the case, the state of the law and the uncertainties of class certification and litigation, and the excellent result for the Class. Given the risks inherent in this litigation and the defenses asserted, the Settlement is fair, adequate, reasonable and in the best interests of the class and one which supports a grant of final approval.

The proposed settlement is the result of more than two years of investigation, informal discovery, litigation and negotiations between the parties. Seplow Decl., ¶¶ 6-14, 20-21. The prospect of settlement of the case was discussed over a period of many months and negotiations were, at all times, adversarial, non-collusive, in good faith, and at arm's length. *Id.* Thus, the Settlement Agreement is the product of extensive and informed negotiations between counsel with substantial litigation experience, who are fully familiar with the legal and factual issues in this case, and who have experience litigating and settling complex and class action cases, including employment cases, facilitated by experienced and respected mediator Mark Rudy. *See Satchell v. Fed. Exp. Corp.*, 2007 WL 1114010, *at* *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."). Seplow Decl., ¶¶ 7, 9, 14, 27-34.

### D. The Class's Positive Response to the Settlement, to Which There Have Been No Objections, Strongly Supports Final Approval

The Ninth Circuit and other federal courts have made clear that the number or percentage of class members who object to or opt out of the settlement is a very significant factor in determining whether to grant final approval. *See Mandujano v. Basic*

---

14

*Vegetable Prods., Inc.*, 541 F.2d 832, 837 (9th Cir. 1976); *see also In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001) ("It is well settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy") (internal quotation marks and citation omitted); *Cody v. Hillard*, 88 F. Supp. 2d 1049, 1059-60 (D.S.D. 2000) (approving the relevant settlement in large part because only 3% of the apparent class had objected to the settlement); *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 372 (S.D. Ohio 1990) (approving the relevant settlement and affording "substantial weight" to the fact that fewer than 5% of the class members elected to opt out of the settlement); *In re Art Materials Antitrust Litig.*, 100 F.R.D. 367, 372 (N.D. Ohio 1983) (approving the settlement and holding that the fact that none of the class members had objected and a small percentage opted out of the settlement was "entitled to nearly dispositive weight").

In this case, not a single Class Member has objected to the settlement or the Motion for Attorneys' Fees, and only three have opted out. Morrison Decl. ¶ 17; Supp. Morrison Decl., ¶ 4. Moreover, because there is no reversion to Defendants, Class Members can only receive a pro-rata *increase* in their already high settlement amounts as a result of any undistributed funds due to uncashed checks. *See* Seplow Decl., ¶ 16.J; Settlement Agreement at ¶ 24(a).

Indeed, the size of the claims and the amount offered to settle them weighs heavily in favor of the settlement. As stated in Plaintiff's Renewed Motion for Preliminary Approval, the gross settlement amount is equal to 69% of the interest and unpaid overtime due to the Class, and 87.3% of the unpaid overtime alone. *See* ECF No. 73 at Section IV.B. Clearly, this is not a "coupon" settlement but will put real "cash" in the hands of each class member, with each compensable workweek valued at approximately $187.69 (net, after employer's taxes have been deducted). *See* Seplow Decl. ¶ 16.F; Supp. Morrison Decl., ¶ 6. The average participating class member will receive approximately $2,300 and the highest payouts are estimated to be over $20,000, with ninety-one Class Members receiving more than $5,000 – substantially more on a per capita basis than in most class actions. *See* Seplow Decl., ¶¶ 16.F, 19; Supp. Morrison

Decl., ¶ 6; *cf., e.g.*, *Deaver v. Compass Bank*, No. 13-CV-00222-JSC, 2015 WL 8526982, at *7 (N.D. Cal. Dec. 11, 2015) (granting final approval of settlement where the average award was $703, the highest award was $1,640, and the gross settlement amount of $500,000 was "10.7 percent of the total potential liability"); *Stovall-Gusman v. W.W. Granger, Inc.*, No. 13-CV-02540-HSG, 2015 WL 3776765, at *2 (N.D. Cal. June 17, 2015) (granting final approval of settlement with 361 putative class members and a $715,000 gross settlement fund (*i.e.*, an average gross recovery of $1,980.61 per class member)); *In re Wells Fargo Loan Processor Overtime Pay Litig.*, No. MDL C-07-1841 EMC, 2011 WL 3352460, at *7 (N.D. Cal. Aug. 2, 2011) (per capita average award of $1,218).

In sum, all of the relevant factors demonstrate that this is a fair, adequate and reasonable settlement, and final approval is therefore appropriate.

### E. The Requested Attorneys' Fees, Costs and Services Award Are Reasonable and Comparable to Those Routinely Awarded

In the present case, Plaintiff's counsel requests, and Defendants do not oppose, an award of attorneys' fees in the amount of one-third of the gross settlement, as well as costs and a service award to the named Plaintiff. As detailed in Plaintiff's Motion for Attorneys' Fees (ECF No. 90), the requested fees, costs and service award are well within the range typically awarded by courts in comparable cases, and are more than justified given the results achieved by Plaintiff's counsel and the fact that Class Counsel's lodestar of $1,015,686 exceeds the requested one-third award. Seplow Decl., ¶ 36.

## V. CONCLUSION

The Parties have reached an agreement that disposes of the risks, costs and delay associated with further litigation, while allowing payments to class members on a fair and equitable basis. Defendants deny liability, but seek, through this settlement, to obtain closure to this litigation. No class member has objected to the settlement or the requested attorneys' fees, which are less than Class Counsel's lodestar. The settlement should be

given final approval on the terms proposed in this motion and the previously-filed Motion for Attorneys' Fees.

Dated:  March 14, 2016                Respectfully submitted,

SCHONBRUN SEPLOW
HARRIS & HOFFMAN LLP
LAW OFFICE OF THOMAS W. FALVEY
DADGOSTAR LAW LLP

By:   /s/ Aidan C. McGlaze
       Aidan C. McGlaze

       Attorneys for Plaintiff Michael Yee and Settlement Class